UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

AMANDA W,[1]

           Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

Case No. 6:20-CV-00707-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Amanda W. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  This court has jurisdiction to

review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).  For the

reasons set forth below, that decision is REVERSED and REMANDED for further proceedings

consistent with this opinion.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last
name.

Plaintiff protectively filed for DIB and SSI on August 3, 2017, alleging disability beginning on March 17, 2016. Tr. 13, 223, 227. Her applications were initially denied on November 3, 2017, and upon reconsideration on January 29, 2018. Tr. 13, 179, 184, 194, 197. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on March 27, 2019. Tr. 31-69. After receiving testimony from plaintiff and a vocational expert, ALJ John Sullivan issued a decision on April 27, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 10-24. The Appeals Council denied plaintiff's request for review on February 24, 2020. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 17, 2016, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: fibromyalgia, lumbar spine degenerative disc disease, borderline personality disorder, bipolar disorder, and posttraumatic stress disorder. Tr. 16. The ALJ recognized other impairments in the record, i.e., gastroesophageal reflux disease, Crohn's disease, opioid use disorder, neuropathy, and greater trochanteric pain syndrome, but concluded these conditions to be non-severe. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. §§ 416.967(b) and with these exceptions: she can sit and stand/walk for six hours in an eight-hour day; push or pull no more than she can carry; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; and occasionally stoop, kneel, crouch and crawl. Tr. 17. Plaintiff's time off task can be accommodated by normal breaks, but she requires ready access to a bathroom. *Id.* She is limited to understanding, remembering, and carrying out

only simple, routine tasks with an SVP of two or less as defined in the Dictionary of

Occupational Titles ("DOT"); her ability to exercise judgment and adapt to changes in the

workplace is limited to simple work related judgments; and she is capable of no more than

occasional interaction with supervisors, coworkers, and the public. Tr. 17-18.

At step four, the ALJ found plaintiff unable to perform past relevant work.  Tr. 22.

At step five, the ALJ found that considering plaintiff's age, education, work experience,

and RFC, she could perform jobs that existed in significant numbers in the national economy,

including inspector and hand packager, garment sorter, and laundry sorter.  Tr. 23.  Thus, the

ALJ concluded plaintiff was not disabled.  *Id.*

## DISCUSSION

### I.    Subjective Symptom Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her

subjective symptom testimony.

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that

the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not

credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19.  The ALJ made no express

finding that plaintiff was malingering.[2]  However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

## A.    Physical Impairments

### 1.    Objective Medical Evidence

The ALJ noted that, in plaintiff's function report, she claimed her physical impairments made it difficult to maintain a position for longer than 15-20 minutes and she was unable to lift or carry more than 15 pounds. Tr. 18 (citing Tr. 281-88).  Further the ALJ recognized that, at the hearing, plaintiff testified she "has difficulty with sitting or standing," "[s]he cannot be on her feet for more than 30 minutes before she has to take a break," and "[s]he has joint pain from her fibromyalgia most severe in her neck[,] shoulders[,] and hips."  Tr. 18-19.  Indeed, plaintiff testified that she could not be on her feet for 30 minutes at a time because her "hips hurt, start hurting really bad, and [her] lower back starts hurting."  Tr. 46.  Her "nerves hurt so bad" and her legs felt "like they are on fire."  Tr. 47.  She described "constant pain" that "doesn't get better" and "can get way worse."  Tr. 48.  She took hydrocodone and tramadol for the pain, but stated it

---

[2] The Commissioner argues "there is affirmative evidence of malingering" and "the ALJ pointed to evidence of malingering in his subjective complaint analysis."  Def. Br. 4 (citing Tr. 786-75, 837-39, 892).  However, the ALJ did not expressly find that plaintiff was malingering.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (holding that "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each").  To the extent, however, that the ALJ found plaintiff "has consistently alleged symptoms worse than what has been observed," Tr. 21, that finding is discussed herein.

is "not enough." Tr. 48. Plaintiff claimed that, because of her pain, she had to miss work two or

three times a month. *Id.*

In finding plaintiff's testimony was inconsistent with the objective medical evidence, the

ALJ pointed to July 2017 X-rays that showed only mild degenerative changes in plaintiff's

lumbar spine. Tr. 19 (citing Tr. 657). This was a specific, clear and convincing reason to

discount plaintiff's testimony regarding the severity of her lumbar spine degenerative disc

disease.

The ALJ also observed that October 2017 electrodiagnostic testing of plaintiff's left

lower limb was only "mildly abnormal, showing subtle evidence of an LS nerve root/segment

radiculopathy with mild neurogenic changes in muscles innervated predominantly by the LS

nerve root on concentric needle examination."[3] Tr. 19 (citing Tr. 758). This was a specific,

clear and convincing reason for discounting the intensity of the nerve pain that plaintiff described

she was feeling in her legs.

Plaintiff argues the ALJ "never identified which testimony [the ALJ] found not credible,

and never explained which evidence contradicted that testimony." Pl. Br. 12. Plaintiff relies on

*Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), where the ALJ "simply stated her non-

credibility conclusion and then summarized the medical evidence supporting her RFC

determination." *Id.* at 494. The Ninth Circuit held, "[t]his is not the sort of explanation or the

---

[3] In October 2017, plaintiff was referred to The Corvallis Clinic, Department of Neurology, for
an "EMG/NCS" (electromyogram and nerve conduction study) to evaluate the "etiology of her
progressive numbness and weakness of the bilateral lower limbs." Tr. 758. "She describe[d]
numbness, shooting pains and painful paresthesia in the left more than the right lower limbs" and
"complain[ed] of low back pain." Tr. 758.
    Previously, in June 2015, plaintiff complained that she "occasionally had sciatic pain,
especially at the left side." Tr. 341. However, Dr. Yong Zhu opined there was "no clear
indication of radiculopathy." *Id.*

kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Id.* That did not happen here. For example, the ALJ cited to certain portions of plaintiff's testimony, plaintiff's statement that "[s]he cannot be on her feet for more than 30 minutes," Tr. 19, which plaintiff described was because "[her] lower back starts hurting, Tr. 46, and then described the evidence that contradicted it, i.e., plaintiff's X-rays that showed only mild degenerative changes in her lumbar spine. Tr. 18-19.

### 2.    Activities of Daily Living

As noted, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857. Here, the ALJ also discounted plaintiff's statements because they were "inconsistent" with her activities of daily living. Tr. 19; *see Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding an ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills"). Specifically, the ALJ found that plaintiff "is able to prepare simple meals," "perform household chores," and "provide personal care." Tr. 17.

However, the ALJ failed to explain *how* these activities of daily living were inconsistent with plaintiff's subjective symptom testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.") (citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[A] claimant need not vegetate in a dark room in order to be eligible for benefits.") (citation and internal quotation marks omitted). In the same respect, the ALJ did not address any of plaintiff's claims in her function report, such as, "I try to

do some cleaning (I can only do a [about 15 minutes] before it hurts too much)." Tr. 282. Thus, the ALJ did not provide a specific, clear and convincing reason for rejecting plaintiff's testimony on the basis of activities of daily living.

### 3.    Effective Treatment—Fibromyalgia

The ALJ also erred in finding, without explanation, that plaintiff's "fibromyalgia has been managed with prescription medication." Tr. 19; *see also* Tr. 21 (observing plaintiff's "fibromyalgia . . . has been managed with pain medication"). An ALJ may discount a claimant's testimony based on effective treatment. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Here, the ALJ cited no portions of the record to support this conclusion or even indicate what medications were successful in managing plaintiff's fibromyalgia. The record shows that plaintiff took tramadol and hydrocodone for her fibromyalgia pain. Tr. 48. But, despite taking these medications, plaintiff complained of "pain all over," which "also cause[d] her fatigue." Tr. 761. Further, an examination reflected that "all 18 points were tender, anterior and posterior," Tr. 764[4], a fact the ALJ did not address at all.

The ALJ relied on a March 2018 progress note for a psychiatry visit during which plaintiff reported, "I am physically doing fantastic," and that she was suffering from "some back pain but nothing significant, serious." Tr. 19 (citing Tr. 910). However, plaintiff otherwise reported pain both before and after this visit, all while continuing to take tramadol and hydrocodone for her pain. *See* Tr. 537 (reporting "[f]eels worse and still hurts all over" and

---

[4] *See Taylor v. Reliance Standard Life Ins. Co.*, 837 F. Supp. 2d 1194, 1199 (W.D. Wash. 2011) (observing a tenderpoint evaluation is used to diagnose fibromyalgia).

worsening pain, and that she was looking into FMLA options to take intermittent days off for relief of her fibromyalgia symptoms to Dr. Kathy Chant on September 22, 2017); Tr, 784 (complaining of "[s]till hurting from fibromyalgia," "[w]alking is hard," and "[p]ain feels deep" to Dr. Chang on October 17, 2017); Tr. 816-17 (reporting chronic pain to Dr. Mari Goldner in January 11, 2018); Tr. 837 (reporting pain score of 7 out of 10 to Dr. Cary Bybee on July 18, 2018); Tr. 871 (complaining of pain on scale of 6 to 10 and worsening symptoms to nurse triage team on July 30, 2018); Tr. 883 (complaining that she is "always in pain" and "overall health is "not so good" to mental health professionals on June 25, 2018); Tr. 894 (reporting that she continues to deal with physical pain and having to take pain medication often to mental health professionals on December 11, 2017).  An ALJ cannot simply "pick out a few isolated instances of improvement over a period of months or years" but must interpret "reports of 'improvement' . . . with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017; *Holohan*, 246 F.3d at 1207-08 (holding ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).  The isolated notation of improvement cited by the ALJ does not reflect the longitudinal record.  *See Garrison*, 759 F.3d at 1013-14.

Finally, the ALJ discounted plaintiff's testimony based on a July 2018 emergency room visit during which she complained of nausea and vomiting for two days, but the "attending physician observed [she] appeared much better than she stated."  Tr. 19.  During this visit, plaintiff also complained of twitching in her right leg, but it stopped when she moved into different positions, Tr. 837, and she exhibited shaking, but was able to stop the shaking on her own.  Tr. 838-39.  The doctor concluded plaintiff's "symptoms were demonstrated to be psychological and she was provided with a prescription for Xanax and discharged."  Tr. 19

(citing Tr. 837-39). The ALJ did not explain how this emergency room record is related to plaintiff's fibromyalgia or how it discounts her testimony regarding her fibromyalgia symptoms. For these reasons, the ALJ's citation to the July 2018 emergency room visit does not constitute a specific, clear and convincing reason to discount plaintiff's testimony regarding her fibromyalgia symptoms.[5]

In sum, the ALJ failed to provide sufficient reasons to discount plaintiff's subjective symptom testimony regarding her physical impairments. While the ALJ properly relied on the objective medical evidence to discount plaintiff's testimony regarding degenerative disc disease and leg nerve pain, this cannot constitute the "sole ground" to discount her testimony. The ALJ failed to explain how plaintiff's activities of daily living undermined her testimony. The ALJ also failed to explain how plaintiff's treatment for fibromyalgia was in fact effective.

**B.    Mental Impairments**

**1.    Greater Mental Symptoms than Observed**

The ALJ discounted plaintiff's testimony regarding her mental impairments because she "frequently claims to be experiencing significantly greater mental symptoms than are observed." Tr. 21. In fact, this was the same reason the ALJ rejected Dr. Hasting's opinion, discussed further below. *Id.* Specifically, the ALJ found Dr. Hastings' opinion was "not persuasive" because "numerous other providers have found that the claimant's presentation is at odds with her allegations." *Id.*

---

[5] The ALJ also noted that "[a] small bowel follow through was performed in October 2017 which showed a normal small bowel." Tr. 19 (citing Tr. 805). This apparently relates to plaintiff's claims of gastroesophageal reflux disease or perhaps her Crohn's disease, which the ALJ found were not severe. Tr. 16.

In support, the ALJ cited an October 2017 Linn County Department of Health Services chart note that states plaintiff "continues to present well but reports suffering from hallucinations." Tr. 892. The chart note further states, "This writer pointed out the incongruence of how she presents vs what she describes is going on." *Id.* Indeed, another chart note dated June 25, 2018, from the same provider states that plaintiff's "symptoms have been difficult to treat as much of the time her reports of symptoms appear to be incongruent with previous reports." Tr. 883; *see also* Tr. 730 (September 8, 2016 chart note from Linn County Mental Health describing that "although she gets confused in the afternoon, no inattention during the session"); Tr. 379 (noting previous treatment for plaintiff's hallucinations was to "back off her painkillers"); Tr. 694 ("Most likely the main component to her confusion/forgetfulness currently is her medication regimen which includes Norco, Tramadol, Flexeril, Klonopin and Wellbutrin (an antidepressant with a diagnosis of bipolar disorder)"); Tr. 936 "Stop the Norco if you can. I advised her to stop the clonazepam. Ideally she would not be on Tramadol either. Opiates and benzos may be worsening her dizziness and confusion.").

The ALJ also relied on the consultative examination report by Dr. Paula Belcher who found plaintiff "lacked credibility and was attempting to appear worse psychologically than she is." Tr. 21 (citing Tr. 772) (quotations marks omitted). The ALJ noted that Dr. Belcher had found plaintiff was able to complete necessary paperwork, despite her claims that she was unable to work because her hallucinations prevented her from completing paperwork. Tr. 21. The ALJ further observed, "Dr. Belcher notes that the claimant did not appear distressed during the evaluation and did not appear to be experiencing hallucinations." *Id.* The ALJ found Dr. Belcher's opinion was "less persuasive as Dr. Belcher does not provide a functional analysis of the claimant's abilities in light of her impairments." *Id.* However, this does not mean the ALJ

discounted Dr. Belcher's assessment of plaintiff's credibility.  Rather, the ALJ was comparing Dr. Belcher's opinion to the opinions of Dr. Barsukov and Dr. Kessler, which the ALJ had just addressed in his decision.  Those doctors had done functional capacity assessments, Tr. 119, 155-56, and the ALJ found their opinions to be "somewhat persuasive."  Tr. 21.  The ALJ observed that Drs. Barsukov and Kessler also found that plaintiff's "mental status exams showing some abnormality, but not to the extent that claimant alleges."  *Id.*  Thus, substantial evidence supports the ALJ's finding that plaintiff "frequently" described mental health symptoms different from what providers observed.

Finally, the ALJ again cited to plaintiff's July 2018 emergency room visit during which the "attending physician observed [plaintiff] appeared much better than she stated" and found her symptoms to be psychological.  Tr. 19.  It is unclear how these records support the ALJ's finding that plaintiff described mental health symptoms different from what were observed.  In fact, the emergency room physician concluded that plaintiff's physical symptoms were psychological and prescribed her Xanax.  Nevertheless, this error was harmless.  The ALJ otherwise provided a specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony regarding her mental impairments, and this reason is supported by substantial evidence.

## 2.    Activities of Daily Living

Again, the ALJ cited to plaintiff's activities of daily living to discount plaintiff's subjective symptom testimony regarding her mental impairments.  But, as explained before, the ALJ did not address how these activities of daily living were inconsistent with plaintiff's subjective symptom testimony.  *Holohan*, 246 F.3d at 1208.  Although this was error, it was harmless because the ALJ cited another specific, clear and convincing reason to discount plaintiff's testimony regarding her mental impairments.

### 3.    Part-Time Work

The ALJ further discounted plaintiff's testimony because, during a September 2018 assessment, plaintiff "noted continued anxiety, depression[,] and hallucinations," but reported "she was working and that she had received a promotion at her work." Tr. 20 (citing Tr. 883). This chart note reflects that plaintiff "recently went back to work and is currently employed part-time at . . . a before and after school child care program." Tr. 833. "[Plaintiff] reports she loves working with the kids and has been successful there as evidenced by a recent promotion." *Id.*; *see also* Tr. 910 ("I just started work again in the afternoon in Albany. . . After school care, so far so good, started last week. It is like a vacation job 4 hours per day."), 915 ("The patient enjoys working with the kids."); 924 ("I just got promoted to work," and is in charge of three people); 950 ("Ct reports she is doing well and is finally feeling stable. Ct reports she is enjoying her job and hopes to be able to move up in position.").

However, just one month later, in October 2018, plaintiff reported she was "manic" and that co-workers commented about "her cleaning a lot and talking a lot and being childish." Tr. 951. Also, in October 2018, plaintiff began a new job as a caregiver. Tr. 245; Tr. 958. Plaintiff worked 24-25 hours per week, three to six hours per shift. Tr. 39. Plaintiff described that during a six-hour shift, "someone's asleep for half of that," "[b]ut when they're awake, it's really hard." *Id.*

"An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). However, holding oneself out for part-time work is not inconsistent with receipt of DIB and SSI, which only require the inability to work full-time. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

Moreover, in discounting plaintiff's testimony, the ALJ did not address the fact that, even on a part-time schedule, plaintiff did not regularly report for work as scheduled, had frequent absences, and worked irregular hours, as attested to by her employer. Tr. 246. Plaintiff's employer modified her work schedule to accommodate her needs and estimated plaintiff worked at 80% of other employees' productivity. Tr. 246.

Thus, plaintiff's part-time work, as described by the ALJ, was not a specific, clear and convincing reason to reject plaintiff's symptom testimony. Again, though, this was harmless error.

### 4.    Effective Treatment

Finally, the ALJ observed that "[i]n January 2017, [plaintiff] reported that her medications were controlling her [mental] symptoms well," and found that plaintiff "has been taking Seroquel, which seems to have been uniquely effective for most of her bipolar symptoms." Tr. 19, 20 (citing Tr. 380, 738). As discussed above, an ALJ must examine evidence in the broader context of a claimant's impairment. *Holohan*, 246 F.3d at 1205. Furthermore, mental health symptoms often wax and wane over time; therefore, isolated instances of improvement are not sufficient evidence to demonstrate that a claimant is not disabled. *Garrison*, 759 F.3d at 1017. The examples an ALJ chooses "must in fact constitute examples of a broader development." *Id.* at 1018 (emphasis added).

Here, the record contains some evidence that plaintiff's improvement was not sustained.[6]

---

[6] *E.g.*, Tr. 380 ("[S]he is experiencing visual hallucinations that are fairly vivid and disturbing."); Tr. 485 ("Pt reports hallucinations since yesterday. Friend states pt has not been coherent the last week."); Tr. 672 ("She has ongoing hallucinations at baseline and seems to experience a hypomanic to manic mood as her baseline."); Tr. 732 ("[She] reports that she continues to have problems with auditory hallucinations which have been turning into command hallucinations telling her to hurt people. She is very frustrated by the fact that the medications do not seem to

However, many of these reports are based on plaintiff's statements, which the ALJ properly discredited, as discussed above. Nevertheless, if any error exists, it is harmless, as the ALJ provided another specific, clear and convincing reason to discount plaintiff's subjective symptom testimony.

## II.    Dr. Michelle Hastings' Opinion

Plaintiff contends the ALJ erred by failing to provide specific and legitimate reasons to reject treating provider Dr. Hastings' opinion. Pl. Br. 17.

Plaintiff filed an application for benefits on August 3, 2017. Under the new regulations, effective for claims filed on or after March 27, 2016, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5867-68 (available at 2017 WL 168819); *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency,

---

be helping sufficiently with this."); Tr. 862 ("recent increase in hallucinations"), Tr. 923 ("hallucinations, which are way worse than before"), Tr. 929 ("[She] reports that since lowering Seroquel and starting Saphris her hallucinations are the same severity, but different in nature."), Tr. 933 ("She is having more hallucinations and confusion."), Tr. 936 ("She has persistent hallucinations[.]"), Tr. 896-97 ("She admits to hypomanic symptoms such as decreased sleep and racing thoughts. The mania can exacerbate multiple times per year. She admits psychosis with manic episodes. She does have this odd, magical thinking, with lots of superstitions and belief. She admits to auditory and visual hallucinations, thought insertion and delusions, paranoia. The auditory hallucinations are daily, commanding and it's a man's voice or patient's voice."), Tr. 904 ("She is on maximum dose of Seroquel and started perphenazine a few months back. Zyprexa was added to help but so far no relief from psychosis is reported."), Tr. 913, 918, 926 ("She has been taking 2 antipsychotic medications, maximum dose of Seroquel and mid range dose of perphenazine without improvement of psychosis.").

*But see* Tr. 899 ("No signs of psychosis identified."); Tr. 704 (no psychosis); Tr. 710 ("no psychosis other than reported 'hallucinations'"); Tr. 728 ("diminished psychosis"); Tr. 899 ("No signs of psychosis identified."); Tr. 904 ("No signs of psychosis identified."); Tr. 912 ("Objectively, no signs of psychosis identified."); Tr. 918 (same); Tr. 926 (same).

(3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The new regulations require an ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

As an initial matter, the parties disagree about the relevance of Ninth Circuit case law in light of the amended regulations. Specifically, the parties dispute whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. *Compare* Pl. Br. 13 *with* Def. Br. 12. The Commissioner argues "the new regulations apply in this case and the prior case law—including a hierarchy of opinions applying articulation requirements like 'specific and legitimate' or 'clear and convincing' reasons—no longer apply." Def. Br. 12.

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a). The court therefore considers whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of the medical opinions.

In a February 5, 2018 letter, treating provider Dr. Hastings described plaintiff's symptoms as "variable" and included "insomnia, distractibility, labile mood, poor concentration, racing thoughts, depressed mood, hallucinations, anxiety, rapid speech, fatigue, anhedonia." Tr. 962. Dr. Hastings noted that plaintiff "reports multiple neurologic symptoms, memory

impairment, and forgetfulness." *Id.* Dr. Hastings opined that plaintiff was moderately limited in: responding to demands; adapting to changes; managing her psychologically based symptoms; setting realistic goals; making plans for herself independently of others; identifying and solving problems; using reason and judgment to make work-related decisions; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; working a full day without needing more than the allotted number or length of rest days; cooperating with others; handling conflicts with others; stating own point of view; initiating or sustaining a conversation; responding to requests, suggestions, criticism, corrections, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Tr. 963. She further indicated that plaintiff would need to take unscheduled breaks from "even a simple, routine job outside of standard breaks, the frequency and duration of which would fluctuate based on symptom severity. Tr. 964 ("Breaks of 10 minutes—2 hours could be needed due to anxiety/panic. This could happen several times a week. This is difficult to estimate."). Dr. Hastings also indicated that she "would expect plaintiff to miss 16 hours (the equivalent of two full workdays) or more per month because of her impairments," explaining that she "would estimate [plaintiff would miss] an average of 2-3 days per month . . . when averaged out over a whole year." *Id.*

Plaintiff claims the ALJ "inaccurately characterized" Dr. Hastings' opinion by classifying her paragraph B limitations, "such as adapting or managing oneself and understanding, remembering, or applying information," as "marked" when Dr. Hastings actually opined that her limitations were "moderate." Pl. Br. 19 (citing Tr. 21); *compare* Tr. 21 *with* Tr. 962-63. Plaintiff claims the ALJ misunderstood Dr. Hastings' opinion and, therefore, the ALJ's rejection of Dr. Hastings' opinion is not supported by substantial evidence. Pl. Br. 19.

However, as the Commissioner observes, the mistake "appears to be a simple scrivener's error." Def. Br. 17 n.8 (citing Tr. 962-63). Despite the misstatement, the ALJ recognized that Dr. Hastings' opined plaintiff would "take additional, unscheduled breaks throughout the day and that [plaintiff] would miss an average of 2-3 days of work per month due to symptoms of her mental impairments." Tr. 21. Thus, any error is harmless. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless . . . if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (citation and internal quotation marks omitted).

Ultimately, the ALJ rejected Dr. Hasting's opinion as "not persuasive" because "numerous other providers have found that [plaintiff's presentation is at odds with her allegations," i.e., "she has consistently alleged symptoms worse than what was observed." Tr. 21. As discussed above, this finding is amply supported by the record. Thus, the ALJ satisfied the supportability and consistency considerations and articulation requirements. Although plaintiff argues for a different interpretation of the record, the ALJ's finding was reasonable and supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## III.    The Lay Witness Testimony of Plaintiff's Mother

Plaintiff argues that the ALJ erred in failing to consider the lay witness statement provided by her mother. Pl. Br. 22.

For claims filed on or after March 27, 2017, new regulations provide that the ALJs are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d); 416.920c(d). Consequently, there is an argument the ALJ is no longer required

to provide reasons that are germane to reject lay witness testimony. *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . . ' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d). As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in *Wendy J.C.*); *but see Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

In her September 20, 2017 Third Party Function Report, plaintiff's mother indicated that plaintiff's daily activities include "yoga stretches in bed, . . . personal hygiene, minimal housekeeping & cooking, watch[ing] TV, naps, visits family, laundry." Tr. 290. Plaintiff's mother further indicated plaintiff needs "verbal cues to remember to shower & wash hair"; "can't use stove or oven due to previous fires"; "her boyfriend administers her meds so she takes the right dosage as directed"; she drives "[o]nly if absolutely necessary for food or meds [because] she's experiencing hallucinations"; and "she loses money [and] also buys things she doesn't need because she forgets." Tr. 291. She also stated that plaintiff's "illnesses, injuries, or conditions effect" her ability to squat, bend, stand, sit, kneel, hear, stair climb, see, remember, complete tasks, concentrate, understand, follow instructions, and use her hands. Tr. 294. According to plaintiff's mother, plaintiff can lift a maximum of 20 pounds; walk five minutes before needing to rest; pay attention for five to ten minutes; and follow instructions when given one or two steps at a time. Tr. 294. Plaintiff's mother also reported that plaintiff does not handle stress well. Tr. 295.

The ALJ did not mention plaintiff's mother's statements in the decision. *See* Tr. 15-22.
But plaintiff's mother's statements were similar to plaintiff's own subjective complaints.
*Compare* Tr. 290-96 *with* Tr. 281-88. Thus, to the extent the ALJ gave a clear and convincing
reason supported by substantial evidence to discount plaintiff's subjective complaints regarding
her mental impairments, and plaintiff's mother's testimony repeated plaintiff's complaints, any
error by the ALJ in failing to consider plaintiff's mother's testimony is harmless. *See Molina*,
674 F.3d at 1122 (holding that "[w]here lay witness testimony does not describe any limitations
not already described by the claimant, and the ALJ's well-supported reasons for rejecting the
claimant's testimony apply equally well to the lay witness testimony," the failure to address the
lay testimony may be deemed harmless). As to plaintiff's mother's statements regarding
plaintiff's physical impairments, that is an issue for remand.

## IV.    Credit-As-True Analysis

When a court determines the Commissioner erred in some respect in making a decision to
deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or
without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C.
§ 405(g)). In determining whether to remand for further proceedings or immediate payment of
benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites
are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the
record has been fully developed and further proceedings would serve no useful purpose, and
(3) if the improperly discredited evidence were credited as true, the ALJ would be required to
find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites
are met, however, the court may still remand for further proceedings "when the record as a whole
creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony regarding her physical impairments. However, the second requisite is not met, as further proceedings are necessary for the ALJ to address plaintiff's physical impairments in light of this opinion. This court does not have to reach the third step of the credit-as-true inquiry.

## ORDER

The Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion.

DATED  December 29, 2021.


_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge

23 – OPINION AND ORDER